UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10965-RGS

ANTHONY COUCHON

v.

FRANK COUSINS, et al.

MEMORANDUM AND ORDER ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

August 31, 2018

STEARNS, D.J.

On October 14, 2013, during a fight with another inmate, Anthony Couchon – then a pretrial detainee at the Essex County Correctional Facility (ECCF) – was bitten by a K-9 dog at the order of its handler, Correctional Officer Leonardo Jorge. After his release from custody, Couchon brought suit in Suffolk Superior Court against Jorge, Sheriff Frank Cousins, and Superintendent Michael Marks (collectively, defendants), seeking damages and alleging unconstitutional conditions of confinement. Defendants removed the case to the federal district court. Before the court are the parties' cross-motions for summary judgment.

BACKGROUND

K-9 units are a fixture of daily life at ECCF, where they are deployed to maintain institutional order. Pl.'s SOF, Dkt #35 ¶¶ 19-21. Before being assigned to ECCF, K-9 handlers and their dogs receive "extensive in-house training" at the Essex County Sheriff's Department (ECSD) and the Boston Police Academy. Defs.' Mem., Dkt #32 at 16. While on duty, the K-9 units are governed by an ECCF use of force policy that provides as follows:

> K-9 teams may be used only under the direct control of handlers with prior authorization by the Superintendent or Director of Security. Authorization is not required for regular routine searches or patrol within or outside the facility, during which under normal circumstances there is limited contact with inmates and injuries would not normally result. There may be rare situations where an employee will have to use a K-9 without prior authorization. Any such use of a K-9 will be strictly reviewed to determine that it was not possible to get timely authorization and it was reasonable for the employee to believe that an emergency existed requiring the immediate use of a K-9 to prevent death or serious bodily injury to himself or others.

Pl.'s SOF ¶ 28. Among the "rare situations" in which a K-9 officer can act without prior authorization are fights between prisoners and cases of prisoner "non-compliance." *Id.* ¶ 23. Between May 5, 2009, and June 30, 2016, ECCF documented fourteen K-9 bite incidents involving inmates. *Id.* ¶ 49. ECCF is unique in being the only correctional facility in Massachusetts that deploys K-9s throughout the institution on a regular basis. *Id.* ¶ 65.

On October 14, 2013, Couchon got into a brawl with another inmate in ECCF's gymnasium building. The fight quickly attracted a crowd. *Id.* ¶¶ 5-6; Defs.' Mem. at 5. Lieutenant Heath Carafa was the first officer to respond; he succeeded in tackling Couchon to the ground. Pl.'s SOF ¶ 8. Couchon "landed with his hands and arms underneath his body," and allegedly refused to follow "orders to place his hands behind his back." *Id.* When Officer Jorge and his K-9 "Gunny" arrived at the scene, Couchon was on the ground. Jorge ordered Couchon to stop resisting and show his hands. Defs.' Mem. at 5. When Couchon refused, Jorge – concerned that Couchon was concealing a weapon – ordered Gunny to bite him. Pl.'s SOF ¶¶ 11, 13. Although the exact number of bites is disputed, there is no question that Gunny bit Couchon more than once. *Id.* ¶ 15. Couchon sustained injuries to both of his legs and was taken to the infirmary. *Id.*; Defs.' Mem. at 6. Couchon claims that his wounds took several weeks to heal, and that the physical scarring and emotional trauma from the dog bites still affect him. Pl.'s SOF ¶ 16.

Pursuant to the ECCF use of force policy, the K-9 Review Board conducted an investigation regarding Gunny's deployment, as Jorge had not received prior authorization to use the K-9. *Id.* ¶¶ 14, 17. The Review Board unanimously concluded that while "Officer Jorge did his best to help his fellow officers during a stressful situation . . . the K-9 should not have been

deployed in this manner in this instance." *Id.* ¶ 17; Pl.'s SOF, Ex. 10 (Essex K-9 Review Board Findings).

Couchon was released from custody on March 23, 2016. Pl.'s Opp'n, Dkt #40 at 2. On October 13, 2016, Couchon filed this Complaint alleging violations of (1) the Federal Civil Rights Act, 42 U.S.C. § 1983 (excessive force and unconstitutional conditions of confinement), (2) the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (excessive force), (3) Articles I, X, and XII of the Massachusetts Declaration of Rights, and (4) common-law claims of assault and battery and intentional infliction of emotional distress. Compl. ¶¶ 56-74.

STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir.

1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995). On cross-motions for summary judgment, each motion is considered on its own merits with all reasonable inferences being drawn in favor of the respective non-moving party. *See OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Can.*, 684 F.3d 237, 241 (1st Cir. 2012).

DISCUSSION

*Section 1983 Claims*[1]

A. Excessive Force

Couchon asserts that Officer Jorge used excessive and unreasonable force in violation of the Due Process Clause of the Fourteenth Amendment[2]

---

[1] While defendants argue that Couchon failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA), this is an affirmative defense that was not raised by defendants in their Answer and was therefore waived. *See Soc'y of Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 58 (1st Cir. 2012) ("The law is clear that if an affirmative defense is not pleaded pursuant to Fed. R. Civ. P.'s 8(c) requirements, it is waived."). The court denied defendants' untimely attempt to amend the Answer to include the defense for failure to show good cause. *See* Dkt #43. In any event, Couchon had been released from custody at the time he filed this Complaint, and the PLRA exhaustion requirement applies only to persons who are prisoners at the time they file suit. *See, e.g., Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009).

[2] The Supreme Court has explained that the Due Process Clause of the Fourteenth Amendment is the proper vehicle for an excessive force claim

5

by ordering Gunny to attack him.  Defendants in response contend that Officer Jorge is protected by qualified immunity.  "A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (*per curiam*).  "This doctrine 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.*, quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

In determining whether a defendant is entitled to qualified immunity, the court applies a two-part test:

> First, we inquire whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation . . . .  Second, we inquire whether the violated right was clearly established at the time that the offending conduct occurred . . . .  The second, "clearly established," step itself encompasses two questions: whether the contours of the right, in general, were sufficiently clear, and whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right.

*Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014) (internal citation omitted).

---

brought by a pretrial detainee, *see, e.g., Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), while the Eighth Amendment's Cruel and Unusual Punishment Clause governs claims brought by convicted prisoners.

In order to make out a prima facie case of a Fourteenth Amendment excessive force claim, "[a] pretrial detainee must show only that the force purposely or knowingly used against him was *objectively* unreasonable." *Kingsley*, 135 S. Ct. at 2473 (emphasis added). The facts of the present case, viewed in the light most favorable to Couchon, make out a plausible violation of Couchon's constitutional rights. According to the K-9 Review Board, there were ten "ECSD officers . . . in close proximity to the altercation," and two officers, including Lt. Carafa, "were already subduing the inmates" when Officer Jorge arrived with his dog. Pl.'s SOF, Ex. 10. Couchon was face-down on the floor, and "[n]one of the officers appeared to be in imminent danger." *Id.* Officer Jorge nonetheless ordered Gunny to bite Couchon. The Review Board unanimously agreed that "the K-9 [Gunny] should not have been deployed in this manner." *Id.* Compounding matters, the Review Board observed that instead of preserving safety and order, Officer Jorge's actions compromised institutional security. Officer Jorge had left "a large group of inmates . . . unattended in the weight training area," which "created a very unsafe environment." *Id.* Officer Jorge's actions – viewed again in the light most favorable to Couchon – could be found by a jury to have been objectively unreasonable under the circumstances.

Finding that the first prong of the qualified immunity test is satisfied, the court now turns to the issue of whether "the violated right was clearly established at the time that the offending conduct occurred." *Ford*, 768 F.3d at 23. Whether the constitutional right asserted by a plaintiff is "clearly established" is a matter of law for the court. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The Supreme Court has recently cautioned that when analyzing qualified immunity in the context of an excessive force claim, a court is to proceed carefully. Because of the fact-intensive nature of the inquiry, the qualified immunity doctrine has special force. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152-1153, 1154 (2018) (*per curiam*) (cautioning courts against undue generality in their approach and noting that under its precedent officers are entitled to qualified immunity unless a prior case "squarely governs," and further cautioning that "a reasonable officer is not required to foresee judicial decisions that do not yet exist in instances where the requirements of the Fourth Amendment are far from obvious"). *See also Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir. 1989) ("The right in question . . . cannot be simply a generalized right, like the right to due process. . . . It must be clearly established in a 'particularized' sense, so that 'the contours of the right' are clear enough for any reasonable official in the defendant's

position to know that what the official is doing violates that right."), quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As a general proposition, "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'"[3] *Kingsley*, 135 S. Ct. at 2475, quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977). Less clear, however, is whether the deployment of a properly trained police dog under the circumstances Officer Jorge found himself in was clearly forbidden by established law.

In the context of subduing a fleeing or uncooperative suspect, the law has been relatively forgiving of the police. *See Jarrett v. Town of Yarmouth*, 331 F.3d 140, 148 (1st Cir. 2003) (declining to find the release of a dog trained to "bite and hold" either a use of deadly force or *per se* unlawful); *Chew v. Gates*, 27 F.3d 1432, 1447 (9th Cir. 1994) (same); *Robinette v. Barnes*, 854

---

[3] Defendants' argument that Couchon's injuries were *de minimis* and therefore not actionable fails, in part because the record establishes that Couchon suffered injuries that, while not grave, were palpable and left emotional scars. *Cf. Bastien v. Goddard*, 279 F.3d 10, 14 (1st Cir. 2002) ("Although the severity of the injury also may be considered . . . we have stated explicitly that a 'serious injury' is not a prerequisite to recovery."); *see also Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("[I]t may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force . . . [but] [t]he degree of injury should not be dispositive."). Excessive force claims can comprehend emotional as well as physical injuries. *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992).

F.2d 909, 912 (6th Cir. 1988) (same); *Vathekan v. Prince George's Cty.*, 154 F.3d 173, 178-179 (4th Cir. 1998) (same, so long as a verbal warning is given before the dog is released); c*ompare Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789 (6th Cir. 2012) (inadequately trained dog unleashed without warning).

As previously noted, the Supreme Court has instructed that "[a] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. This determination is to be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time," as well as the need "to preserve internal order and discipline and to maintain institutional security." *Id., see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."). Here, as the Review Board noted in its decision, Officer Jorge was operating in "a stressful situation," and concerned that Couchon was concealing a weapon. *See Roy v. City of Lewiston, Maine*, 42 F.3d 691, 695 (1st Cir. 1994) ("[W]hether substantive liability or qualified immunity is at issue, the Supreme Court

F.2d 909, 912 (6th Cir. 1988) (same); *Vathekan v. Prince George's Cty.*, 154 F.3d 173, 178-179 (4th Cir. 1998) (same, so long as a verbal warning is given before the dog is released); c*ompare Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789 (6th Cir. 2012) (inadequately trained dog unleashed without warning).

As previously noted, the Supreme Court has instructed that "[a] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473. This determination is to be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time," as well as the need "to preserve internal order and discipline and to maintain institutional security." *Id., see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."). Here, as the Review Board noted in its decision, Officer Jorge was operating in "a stressful situation," and concerned that Couchon was concealing a weapon. *See Roy v. City of Lewiston, Maine*, 42 F.3d 691, 695 (1st Cir. 1994) ("[W]hether substantive liability or qualified immunity is at issue, the Supreme Court

intended to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases.").

Under the circumstances, I find that the law as it existed at the time Officer Jorge unleashed Gunny (as is still the case today) does not clearly establish the unreasonableness of using a trained dog to subdue a noncompliant inmate. I therefore conclude that Officer Jorge is entitled to qualified immunity.

B. *Respondeat Superior* and Failure to Supervise

Because it is possible, albeit in "rare cases," for a supervisor or a municipal employer to be liable where an officer has been granted good-faith qualified immunity in spite of a constitutional violation, *see Walker v. Waltham Hous. Auth.*, 44 F.3d 1042, 1047 (1st Cir. 1995), I will briefly address Couchon's supervisory liability claims. Couchon contends that Sheriff Cousins and Superintendent Marks failed to "properly supervise, train, and discipline K-9 officers, including Officer Jorge . . . causing the use of excessive force." Compl. ¶ 59. Under section 1983, "supervisory law enforcement officers incur no *respondeat superior* liability for the actions of their subordinates." *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1379 (1st Cir. 1995). Rather, absent direct participation on the part of the supervisor in the challenged conduct at issue,

> [a] supervisor "can be held liable . . . [only] if (1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was '*affirmative[ly] link[ed]*' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence [of the supervisor] amounting to *deliberate indifference*'" . . . . Deliberate indifference will be found only if "it would be manifest by any reasonable official that his conduct was very likely to violate an individual's constitutional rights" . . . . The "affirmative link" requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.

*Id.* at 1379-1380 (emphases in original) (internal citations omitted). In his opposition to summary judgment, Couchon offers no factual support demonstrating a lack of training or supervision of K-9 handlers and their dogs, much less any plausible evidence that Sheriff Cousins and Superintendent Marks exhibited deliberate indifference or that their actions were affirmatively linked to Officer Jorge's conduct. This is true whether the issue is a failure to provide Officer Jorge and K9 Gunny with adequate training[4] or one of ignoring warning signals that a constitutional violation was likely to occur.[5] Quite the contrary: "Officer Jorge and K-9 Gunny have

---

[4] "Failure to train [must] reflect . . . deliberate indifference to the constitutional rights of [the facility's] inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

[5] "An important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned, acquiesced, or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the

graduated from, and are certified by, the Boston Police Academy as a patrol dog handler and K-9," and "the record fails to allege even a single prior incident which might have put either Cousins or Marks on notice that Jorge and K-9 Gunny's work was inadequate." *See* Pl.'s SOF, Ex. 10; Defs.' Mem. at 17.

C. <u>Unconstitutional Conditions of Confinement</u>

Couchon claims – in the wake of the Supreme Court's *Kingsley* decision – that the court should follow those circuit courts that have adopted a purely objective standard for assessing unconstitutional conditions of confinement. More specifically, Couchon argues that ECCF's K-9 policy, as promulgated by Superintendent Marks and Sheriff Cousins, created an unconstitutional condition of confinement which placed him at substantial risk of serious harm. Defendants, for their part, contend that they are protected from Couchon's claims by qualified immunity.

Prior to the Supreme Court's ruling in *Kingsley*, the First Circuit had established a two-step analysis under the Fourteenth Amendment for a pretrial detainee's conditions of confinement claims:

> First, the plaintiff must establish that, from an objective standpoint, the conditions of his confinement deny him the

---

constitutional rights of citizens." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 93 (1st Cir. 1994).

> minimal measure of necessities required for civilized living . . . .
> Second, the plaintiff must show that, from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety . . . . Deliberate indifference, in this sense, is a mental state akin to criminal recklessness.

*Suprenant v. Rivas*, 424 F.3d 5, 18-19 (1st Cir. 2005). In *Kingsley* the Supreme Court, ruling in an excessive force context, held that a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," essentially objectivizing the subjective prong for excessive force claims brought by pretrial detainees. *Kingsley*, 135 S. Ct. at 2473. Several circuits have since carried the *Kingsley* analysis over into conditions of confinement cases. The Second Circuit, for example, in *Darnell v. Pineiro*, held that "*Kingsley*'s broad reasoning extends beyond the excessive force context in which it arose." 849 F.3d 17, 36 (2d Cir. 2017). "The same objective analysis," the Second Circuit reasoned, "should apply to an officer's appreciation of the risks associated with an unlawful condition of confinement in a claim for deliberate indifference under the Fourteenth Amendment." *Id.* at 35. Similarly, the Ninth Circuit, sitting *en banc*, noting "the broad wording of *Kingsley*," opined that "[t]he Court did not limit its holding to 'force' but spoke to 'the challenged governmental action' generally." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), quoting *Kingsley*, 135 S. Ct. at 2473. Accordingly, the Ninth Circuit

was "persuaded that *Kingsley* applies" to all claims "brought by pretrial detainees against individual defendants under the Fourteenth Amendment." *Castro*, 833 F.3d at 1070.

While there is much to be said for the reasoning of the Second and Ninth Circuits, in the absence of a Supreme Court decision squarely on point, this court is bound by existing precedent in the First Circuit. In this circuit, the deliberate indifference test contains both objective and subjective components, as set out in *Suprenant, supra. See also Burrell v. Hampshire Cty.*, 307 F.3d 1, 7-8 (1st Cir. 2002). But in any event, whether *Kingsley* will ultimately be extended by the First Circuit to encompass conditions of confinement claims has no bearing on the outcome of this case.

As with the analysis of Officer Jorge's qualified immunity defense, the court must first determine whether Marks's and Cousins' actions – weighed in the light most favorable to Couchon – make out a constitutional violation, starting with the prison conditions themselves. There is "no static 'test' . . . by which courts determine whether conditions of confinement are cruel and unusual," because the Eighth Amendment (and, as here, its Fourteenth Amendment counterpart) "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), quoting *Trop v. Dulles*, 356 U.S. 86,

101 (1958) (plurality opinion). However, these "'judgments should neither be nor appear to be merely the subjective views' of judges." *Id.* at 352, quoting *Rummel v. Estelle*, 445 U.S. 263, 275 (1980).

> Courts cannot assume that . . . prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system: to punish justly, to deter future crime, and to return imprisoned persons to society with an improved change of being useful, law-abiding citizens.

*Id.*

Even viewing the record in the light most favorable to Couchon, the court cannot find that ECCF's K-9 program rises to the level of a constitutional deprivation of "the minimal measure of necessities required for civilized living." *Ford*, 768 F.3d at 23. While there are risks inherent in maintaining a K-9 program throughout a prison – including the likelihood of bites and even serious injury to inmates – courts give prison administrators wide latitude in "achiev[ing] the goals of the penal function in the criminal justice system," finding unconstitutional conditions of confinement in only the most egregious cases. *Rhodes*, 452 U.S. at 352; *compare Hutto v. Finney*, 437 U.S. 678, 682 (1978) (affirming unconstitutional conditions of confinement claim for sustained "punitive isolation" and starvation); *Rivas*, 424 F.3d at 19 (upholding unconstitutional conditions of confinement claim for "around-the-clock segregation,"

withholding of hygienic services, and multiple daily strip-searches). As nothing in the record suggests that Couchon's prison experience approaches this high bar, the conditions of confinement claim fails.

*Remaining State Law Claims*

As the First Circuit has recently noted, "when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims if doing so would not serve 'the interests of fairness, judicial economy, convenience, and comity.'" *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cit. 2017), quoting *Desjardins v. Willard*, 777 F.3d 43, 45-46 (1st Cir. 2015); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims."). Because the court finds the entry of summary judgment in favor of the defendants to be appropriate as to the sole federal law count contained in the Complaint, the remaining state law claims will be remanded to Suffolk Superior Court for further proceedings, as to the merits of which the court takes no position.

ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u> with respect to Count One. Couchon's partial motion for summary judgment is <u>DENIED</u>. The remaining claims brought under state constitutional, statutory, and common law are <u>REMANDED</u> to the Superior Court for further proceedings.

                SO ORDERED.

                <u>/s/ Richard G. Stearns</u>
                UNITED STATES DISTRICT JUDGE